UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAVID BRIGNAC                                    CIVIL ACTION

VERSUS                                           NUMBER: 15-4907

FREDERICK SMITH, ET AL.                          SECTION: "N"(5)

## PARTIAL REPORT AND RECOMMENDATION

Using the standardized form that is provided to state prisoners for filing suit pursuant to 42 U.S.C. §1983, the above-captioned matter was filed *in forma pauperis* ("IFP") by *pro se* Plaintiff, David Brignac, against Defendants, Deputy Frederick Smith of the Jefferson Parish Sheriff's Office ("JPSO"), Deputy Stoltz of the JPSO, District Attorney Paul D. Connick, Jr., Commissioner Patricia Joyce of the Twenty-Fourth Judicial District Court, Detective Thomas Gai of the JPSO, Detective Jean Lincoln of the JPSO, Deputy C. Green of the Jefferson Parish Correctional Center ("JPCC"), Deputy A. Nelson of the JPCC, Sergeant T. Berrian of the JPCC, Sergeant S. Wright of the JPCC, Carl Preyer of the JPCC, Officer "John Doe" of the JPSO, two "John Doe" officers of the JPCC, "John Doe" of the JPCC Dietary Department, and Judge "John Doe" of the Twenty-Fourth Judicial District Court, Division "L." (Rec. doc. 1, pp. 1, 2, 6).

Plaintiff is an inmate of the JPCC since his arrest on unspecified charges on October 28, 2014. The rather lengthy allegations that Plaintiff presents in his complaint against the 16 specifically or fictitiously-named Defendants can be fairly segregated into two categories – those challenging the fact and duration of his confinement and those challenging the conditions of his confinement at JPCC. Those allegations are described with greater particularity below.

In that portion of his complaint that he conveniently denominates "False Inprisonment," Plaintiff generally alleges that the charges upon which he was booked were unsupported by probable cause and that District Attorney Connick subjected him to double jeopardy by lodging a duplicative charge against him. Brignac further alleges that the arrest report/probable cause affidavit that was generated in his criminal case was not signed by an appropriate judicial officer and that the policy report narrative authored by Deputy Smith was based on inaccurate information. Plaintiff additionally complains that Commissioner Joyce approved the unsupported arrest warrant on October 29, 2014 and set an excessive bail on that date. Contrary to the charged offense(s), Plaintiff contends that no firearm was involved and as no gunpowder residue test was administered, there was no factual basis upon which to charge him with a weapons offense. (Rec. doc. 1, pp. 8-11).

Under the heading of "Falsifying Police Reports," Plaintiff next complains that Deputy Smith's police report narrative erroneously indicated that Plaintiff had discharged a firearm, that Deputy Stoltz' narrative wrongly indicated that Plaintiff had given a statement to Captain Dyess, and that the narrative otherwise contained falsified admissions attributed to him. (Rec. doc. 1, pp. 11-12).

In the next section of his complaint, designated "Failure To Protect," Plaintiff complains of a number of discrete events that allegedly occurred during his incarceration at JPCC. First, on November 25, 2014 while he was housed on the administrative segregation tier of JPCC, Plaintiff alleges that Deputy Nelson closed the cell door on him without warning. Next, on January 18, 2015, Plaintiff states that he informed Sergeant Berrian that a number of other inmates on the "pod," including his cellmate, were enemies of his, but nothing was done about it. Third, on January 19, 2015, Sergeant Berrian reportedly ordered the water

2

supply to Plaintiff's cell to be shut off after the flooding of the "pod" that Plaintiff had nothing to do with. And fourth, on January 23, 2015, Deputy Green is alleged to have opened the door to Plaintiff's cell and allowed another inmate to attack him, after which Plaintiff was denied the opportunity to see a ranking jail official or to receive a "medical response." (Rec. doc. 1, pp. 12-14).

Under the heading of "Right To Privacy," Plaintiff next alleges, with little elaboration, that the telephone system in place at JPCC violates his state constitutional right to privacy in his communications as well as the Thirteenth Amendment. (Rec. doc. 1, pp. 14-15).

Next, in terms of "Freedom Of Religion," Plaintiff alleges that on June 27, 2015, during the month of Ramadan, unidentified Sergeants at JPCC refused to recognize or acknowledge his religious practices by failing to serve his food trays at the appointed time. According to Plaintiff, the meals that were served during the month of Ramadan resembled "suicide trays," jargon for the food that is served, as a form of punishment, to inmates on suicide watch. Plaintiff also complains that the portions of food that he is served are not nutritionally adequate. (Rec. doc. 1, pp. 15-17).

Citing his state constitutional "Right To Bail," Plaintiff next alleges that on or about June 25, 2015, his "… bond was strip[p]ed, and a hold without bond was placed." Plaintiff does not identify who was responsible for this action. (Rec. doc. 1, p. 17).

Finally, under the heading, "Malfeasance Of Office," Plaintiff presents a series of allegations that implicate the legality of his arrest and resulting confinement. First, he alleges that Detective Lincoln managed to convert an individual named Chris Michael Carr, Jr. from a subject or suspect into a witness against Plaintiff. An Officer "John Doe" was also somehow involved in the changing of Carr's statement, which ultimately led to Plaintiff's arrest and

"Officer Frederick Smith was involved with altering of reports." Next, Brignac alleges that the Division "L" Judge of the Twenty-Fourth Judicial District Court, whom he later identifies as the Honorable Donald A. Rowan, Jr., violated various judicial canons by finding that probable cause existed following a preliminary hearing held on September 16, 2015 and October 26, 2015, a finding that was not supported by sufficient evidence. Detective Gai is alleged to have wrongfully verified, under penalty of perjury, that the information contained in Plaintiff's arrest warrant was true, including a previous guilty plea on July 11, 2013. And lastly, Plaintiff alleges that JPCC booked him on charges that differ from those set forth in the bill of information, violating his Eighth Amendment rights to be free from excessive bail and cruel and unusual punishment. (Rec. doc. 1, pp. 17-22). For the foregoing transgressions, Plaintiff seeks a substantial amount of compensatory and punitive damages as well as declaratory relief. (*Id.* at pp. 24-25).

Initially, the Court is required to examine Plaintiff's complaint to determine whether the allegations presented therein, if proven, would undermine the constitutional validity of his state court conviction or confinement. When a state prisoner attacks the very fact or length of his confinement, the appropriate course of action is a petition for writ of *habeas corpus,* even though the facts of the complaint might otherwise be sufficient to state a claim under 42 U.S.C. §1983. *Caldwell v. Line*, 676 F.2d 494 (5th Cir. 1982); *Richardson v. Fleming*, 651 F.2d 366 (5th Cir. 1981); *Johnson v. Hardy*, 601 F.2d 172 (5th Cir. 1979). Where the exclusive initial remedy is for *habeas corpus* relief, exhaustion of state court remedies is required, a requirement that applies to both pre-trial and post-conviction *habeas* proceedings. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198 (1982); *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827 (1973); *Dickerson v. State of Louisiana*, 816 F.2d 220, 225 (5th Cir.)

4

*cert. denied*, 484 U.S. 956, 108 S.Ct. 352 (1987).  The exhaustion requirement is satisfied only where a prisoner's grounds for federal *habeas corpus* relief were previously presented to the state's highest court in a procedurally proper fashion.  *Knox v. Butler*, 884 F.2d 849, 852 n. 7 (5th Cir. 1989), *cert. denied*, 494 U.S. 1088, 110 S.Ct. 1828 (1990); *Dupuy v. Butler*, 827 F.2d 699, 702 (5th Cir. 1988).

Plaintiff's sweeping allegations – that his arrest was unsupported by probable cause, that the charging documents were not properly executed and contain false and inaccurate information, that he has been placed in double jeopardy, that his bail was excessive and was subsequently denied in its entirety, and that he remains incarcerated due to various acts constituting "malfeasance in office" – challenge the fact and duration of his confinement, which must initially be pursued on *habeas corpus* grounds, but only after he has exhausted available state court remedies with respect to them.  *Boyd v. Biggers*, 31 F.3d 279, 283 (5th Cir. 1994); *Hernandez v. Spencer*, 780 F.2d 504, 505 (5th Cir. 1986); *Carmona v. Butler*, No. 88-CV-1360, 1988 WL 86782 at *2 (E.D. La. July 27, 1988).  In that regard, Plaintiff indicates on the face of his complaint, in answer to question No. I(A) of the standardized §1983 form, that he has not initiated any other lawsuits, in state or federal court, dealing with the same facts involved in this action or otherwise relating to his imprisonment.  (Rec. doc. 1, p. 1).  Accordingly, insofar as the instant matter can be construed as a request for *habeas corpus* relief, it should be dismissed without prejudice for failure to exhaust available state court remedies.  *McGrew v. Texas Board of Pardons & Paroles*, 47 F.3d 158, 161 (5th Cir. 1995).

The Court must next make a recommendation as to the disposition of the §1983 claims raised by Plaintiff's complaint.  At the outset, the Court notes that although Plaintiff named Sergeant S. Wright and Carl Preyer of the JPCC as additional Defendants to this suit,

his complaint contains no specific allegations against them whatsoever.  Personal involvement is an essential element of a civil rights cause of action, *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983), and in order to successfully plead a cause of action in a civil rights case, a plaintiff must enunciate a set of facts that illustrates the defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).  In the absence of any specific allegations against Wright and Preyer, they should simply be dismissed from this litigation.

As noted earlier, implicated in that portion of Plaintiff's complaint that he labels "False Inprisonment" are Commissioner Joyce, D.A. Connick, and Deputy Smith.  In light of the absolute judicial and prosecutorial immunities that Joyce and Connick respectively enjoy, no valid §1983 claims lie against them here.  *Krueger v. Reimer*, 66 F.3d 75, 76-77 (5th Cir. 1995); *Boyd*, 31 F.3d at 284-85.  Accordingly, those claims should be dismissed as frivolous under 28 U.S.C. §1915(e)(2)(B) as lacking an arguable basis in law or fact.  *Krueger*, 66 F.3d at 76-77.  Plaintiff's §1983 claim for monetary damages against Deputy Smith runs afoul of the strictures of *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364 (1994).  Unless and until Plaintiff is able to have his confinement declared invalid by an appropriate state or federal tribunal that is authorized to make such a determination, he has no §1983 damage claim against Smith.  *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996); *McGrew*, 47 F.3d at 160-61.  The strictures of *Heck* apply with equal force to the allegations that Plaintiff makes against Deputies Smith and Stoltz in the "Falsifying Police Reports" portion of his complaint and those that he levies against Detective Lincoln, Officer Smith, Judge Rowan, and Detective

Gai in the "Malfeasance Of Office" portion of his complaint.[1/]  The same is true with respect to the allegations presented in the "Right To Bail" portion of Plaintiff's complaint which, the Court additionally observes, is attributed to no individual in particular.  All such claims should be dismissed as frivolous as barred by *Heck*.  *Krueger*, 66 F.3d at 76-77.

One numbered paragraph in Plaintiff's complaint, that denominated "Right To Privacy," warrants special treatment.  There, Plaintiff complains that the phone system that is made available to inmates at JPCC violates his state constitutional right to privacy in his communications as well as the Thirteenth Amendment.  Whatever protections may be afforded to Plaintiff via the Louisiana Constitution are of no moment here because §1983 is intended to redress the deprivation of the rights, privileges, or immunities secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 664 (1986).  The Court is also at a loss to understand how the integrity of the JPCC inmate phone system implicates the Thirteenth Amendment's protections against slavery or involuntary servitude.  Be that as it may, Plaintiff cites no specific instances in which he believes that his telephonic communications were compromised.  That aside, the law is clear that prison officials are accorded broad discretion in fashioning prison regulations regarding telephone use.  *Hill v. Estelle*, 537 F.2d 214, 215 (5th Cir. 1976).  A prisoner's right to telephone access is subject to rational limitations in the face of the legitimate security interests of the penal institution at which the prisoner is housed.  *Douglas v. Gusman*, 567 F.Supp. 2d 877, 886 (E.D.

---

[1/] In the latter portion of his complaint, Plaintiff also complains that the JPCC booked him on charges that were different from those set forth in the bill of information that was filed against him.  (Rec. doc. 1, p. 22).  The JPCC is not named as a Defendant herein and, in any event, that facility is a building, not an entity or person who is capable of being sued under §1983.  *Wetzel v. St. Tammany Parish Jail*, 610 F.Supp. 2d 545, 548-49 (E.D. La. 2009).

La. 2008)(quotations and citations omitted). In light of inmates' known propensities to further their illegal activities while in jail, local prisons generally disallow prisoners from possessing cell phones and routinely record inmates' phone calls. *See*, *e.g.*, *Waganfeald v. Gusman*, 674 F.3d 475, 484-85 (5th Cir.), *cert. denied*, ___ U.S. ___, 133 S.Ct. 328 (2012). Those practices are reasonably related to penological interests and easily pass constitutional muster. *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261 (1987). This claim should thus be dismissed as frivolous under §1915(e)(2)(B). *Krueger*, 66 F.3d at 76-77.

Finally, in the section of his complaint that he labels "Failure To Protect," Plaintiff complains, *inter alia*, of the action/inaction of Sergeant Berrian on two occasions. First, on January 18, 2015, Plaintiff states that he informed the Sergeant that he had "enemies" on the "pod," one being his cellmate, which the Sergeant acknowledged but did nothing about. To prevail on a failure-to-protect claim under §1983, a prisoner must show that he was incarcerated under conditions posing a <u>substantial</u> <u>risk</u> <u>of</u> <u>serious</u> <u>harm</u> and that prison officials were deliberately indifferent to his need for protection. *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995)(emphasis added). "In order to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979 (1994)). Here, Plaintiff does not allege that there has ever been a physical confrontation between himself and his cellmate of which Sergeant Berrian was aware, either prior to January 18, 2015 or in the over eight months that followed until the date that he signed his complaint on September 26, 2015. Under these circumstances, the Court is unable to conclude that the Sergeant's failure to perceive the reported animosity between Plaintiff and his cellmate as a genuine threat to the

former's security, one that posed a substantial risk of serious harm, rather than a routine dispute between the two that would soon be forgotten. *Thomas v. Gusman*, No. 11-CV-1424, 2012 WL 607970 at *4-5 (E.D. La. Jan. 27, 2012), *adopted*, 2012 WL 607698 (E.D. La. Feb. 24, 2012)(quoting *McKnight v. Livingston*, No. 06-CV-3674, 2007 WL 221926 at *2 (S.D. Tex. Jan. 25, 2007)).

Secondly, Plaintiff complains that on January 19, 2015, Sergeant Berrian ordered that the water to Plaintiff's cell only be shut off after the pod was flooded, something Plaintiff had nothing to do with, as a result of prior incidents between himself and the Sergeant. Plaintiff does not allege that the cessation of water to his cell extended into the next day, that he was deprived of other liquids or access to restroom facilities during this time, or that his health suffered in any measurable way as a result of the cessation. As Plaintiff makes no showing of having suffered a physical injury due to what appears to have been a temporary water cessation, his request for compensatory damages is barred by 42 U.S.C. §1997e(e). *Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599, 605-06 (5th Cir. 2008); *Herman v. Holiday*, 238 F.3d 660, 665-66 (5th Cir. 2001). Plaintiff's §1983 claims against Sergeant Berrian should thus be dismissed as frivolous under §1915(e)(2)(B). *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).

With the foregoing recommended dismissal, without prejudice, of Plaintiff's *habeas corpus* claims and the recommended dismissal of Plaintiff's §1983 claims as barred by absolute immunity, *Heck*, or as frivolous, that will leave before the Court as potentially viable only Plaintiff's §1983 "Failure To Protect" claims against Deputies Nelson and Green and the claims that he advances under "Freedom Of Religion," assuming that he is able to identify and name as Defendants herein one or more of the "John Doe" JPCC Sergeants who are

9

implicated in the latter paragraph of his complaint. By separate order, summonses will be issued as to Nelson and Green.

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that Plaintiff's complaint, to the extent that it can be construed as a request for federal *habeas corpus* relief, be dismissed without prejudice for failure to exhaust available state court remedies.

It is further recommended that, as to the specifically named Defendants, all §1983 claims except those against Deputies Nelson and Green be dismissed with prejudice pursuant to 28 U.S.C. §1915(e)(2)(B).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[2/]

New Orleans, Louisiana, this 13th day of January, 2016.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[2/] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.